UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
99 SEP 15 PH 4: 01
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| RUSSELL STRICKLAND, | }<br>} |
| Plaintiff, | }<br>} |
| v. | } CASE NO. CV 98-B-0374-S<br>} |
| THE WATER WORKS AND SEWER<br>BOARD OF THE CITY OF<br>BIRMINGHAM, ALABAMA, | }<br>}<br>}<br>} |
| Defendant. | } |

ENTERED
SEP 1 5 1999

## MEMORANDUM OPINION

Currently before the court is the motion of defendant Water Works and Sewer Board of the City of Birmingham ("defendant" or "the Board") for summary judgment and the cross-motion of plaintiff Russell Strickland ("Strickland" or "plaintiff") for summary judgment. Plaintiff alleges that defendant discharged him in violation of the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA"). Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that defendant's motion is due to be granted and plaintiff's motion is due to be denied.

### I. FACTUAL SUMMARY

Plaintiff was employed by defendant for eighteen years before his termination in March 1997. (Pl. Aff. 1 ¶ 2).[1] At the time of his termination, plaintiff held the position of Supervisor-Service Representative. (Def. Ex. 2). Randolph Harmon ("Harmon") was the manager of the Service Department at the time of plaintiff's termination. (Harmon Aff. ¶ 2).

---

[1] Plaintiff submitted two affidavits to the court. Affidavit 1 refers to the affidavit dated June 11, 1998, and Affidavit 2 refers to the affidavit dated August 20, 1998

1

On February 25, 1997, Harmon instructed plaintiff to investigate a complaint from a customer regarding a high water bill. (*Id.* at ¶ 4; Pl. Aff 2 ¶ 2). Harmon asked plaintiff to complete the job by March 3, 1997. (Pl.'s Cross M. Sum. J. Ex B). On March 5, 1997, Harmon called plaintiff to ascertain what the status was regarding the customer's complaint. (*Id.* at ¶ 7). Plaintiff informed Harmon that he had not been "in the field" to check on the problem, but that he had put a "hold" on the customer's account so that the customer would not be inconvenienced by the delay. (Pl. Aff. 2 ¶ 7, 8). He informed Harmon that he would take care of the complaint when he returned from his vacation day scheduled for March 6, 1997. (*Id.* at ¶ 8). Thereafter, Harmon and plaintiff had a meeting regarding Harmon's instructions to plaintiff to handle the complaint. (Harmon Aff. ¶ 2). Plaintiff states that he told Harmon that he did not feel well and needed to take a sick day, left the meeting, and went home. (Pl. Aff. 1 ¶ 3, Pl. Aff. 2 ¶ 9). Harmon recalls that plaintiff stated that "he was tired [and] did not have to put up with this," then abruptly left the meeting. (Harmon Aff. ¶ 14,15). Harmon called plaintiff at home and asked plaintiff to return to the office on March 6, 1997. (Pl. Aff. 2 ¶ 16). Harmon told plaintiff that he was writing the plaintiff up for insubordination for leaving. (*Id.*)

On May 6, 1997, plaintiff called defendant's in-house Equal Employment Opportunity Officer, Runae Gary ("Gary"), and told her that he had an incident with Harmon the previous day regarding a misunderstanding about a work assignment. (Gary Aff. ¶ 5-6). Gary stated that plaintiff recounted the incident to her and claimed that he had no other alternative but to leave during his meeting with Harmon. (*Id.* at ¶ 7). She informed him that he had many other alternatives and that he created an issue when he left the premises. (*Id.* at ¶ 8-10). Plaintiff told Gary that he did not want to meet with Harmon. (*Id.* at ¶ 13).

On March 6, 1997, the Water Works Board management gave plaintiff written notice that it was considering taking disciplinary action against him for failure to follow direct work orders and instructions and for insubordination. (Def. Ex. 5).[2] Plaintiff was told that pursuant to the Board's disciplinary policy in the Employee Handbook he was subject to the punishment of immediate suspension or discharge due to his violations. (*Id.*)

On March 6, 1997, plaintiff went to see his doctor and obtained a letter from his physician Dr. Prakash Kansal which stated in pertinent part: "This is to certify that Mr. Strickland has been under my care for diabetes melletus and hypertension for approximately 2 years. He has been having a hard time accepting that he has diabetes." (Pl. Aff. 1 ¶ 6, Exh. A to Pl. Aff 1). Plaintiff was given a hearing on March 11, 1997. (Def. Ex. 7 ¶ 12). On March 18, 1997, plaintiff filed an EEOC Charge of discrimination. (Def. Ex. 8). The EEOC Charge alleged that the Board discriminated against him on the basis of race and disability. He did not state what his disability was in the EEOC Charge. (*Id.*) On April 3, 1997, the EEOC informed defendant that there was no need for a response to the Charge and that the Charge would be disposed of in the near future. (Def. Ex. 9). Plaintiff filed his suit with this court on February 17, 1998. The EEOC issued plaintiff a right to sue letter on February 23, 1998. (Def. Ex. 10).

In August of 1993, defendant incorporated the FMLA into its overall personnel policy and placed the policy in the employee handbook. (Def. Am. Br. Ex. 1,2). In 1995 each employee, including plaintiff, signed a form indicating that they had received a copy of the updated employee handbook and agreed to read and abide by all policies, including the sick leave policy. (Def. Am. Br. Ex. 3). The sick leave policy contains the defendant's FMLA policy. (Def. Am. Br. Ex 4).

---

[2] Plaintiff states that he received the March 6, 1997, Notice from the Board of possible disciplinary action on March 7, 1997.

## I. SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper if the pleadings and evidence indicate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgement, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the non movant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the non movant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988)

## III. DISCUSSION

### A. Family and Medical Leave Act Claim

29 U.S.C. § 2615 provides in pertinent part that it shall be unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter," or "to discharge or in any manner discriminate against any individual for

opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(1)(2). In considering whether this section of the FMLA has been violated, the employer's interest is relevant in determining whether the employer has taken adverse action against the employee for exercising an FMLA right.

For purposes of the FMLA, a "serious health condition" entitling an employee to FMLA leave means "an illness, injury, impairment, or physical or mental condition that involves- - (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider. 29 U.S.C. §2611(11). "Serious health conditions" are discussed further in the regulations implementing the Family Medical Leave Act. 29 C.F.R. §825.114 (a)(2)(iii) notes that a "serious health condition involving continuing treatment by a health care provider includes . . . [a]ny period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which . . . (C) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.)." The regulations further state that: "Absences attributable to incapacity under paragraphs (a)(2) (ii) or(iii) qualify for FMLA leave even though the employee or the immediate family member does not receive treatment from a health care provider during the absence, and even if the absence does not last more than three days." 29 U.S.C. §C.F.R.114(e).

To establish a prima facie case for a violation of the FMLA, plaintiff must establish that: (1) he availed himself to a right protected by the FMLA; (2) he thereafter suffered an adverse employment decision; and (3) there was a causal connection between the two events. *Dollar v. Shoney's*, 981 F.Supp. 1417, 1419-1420 (N.D.Ala 1997)(quoting *Morgan v. Hilti*, 108 F.3d 1319, 1325 (10th Cir. 1997)). If plaintiff establishes a prima facie case, thereby giving rise to a presumption of unlawful, disparate treatment, then at the second stage of analysis, the burden of

production shifts to defendant to rebut the presumption of intentional discrimination thus created by articulating legitimate, nondiscriminatory reasons for the contested employment action. *Dollar*, 981 F.Supp at 1420 (quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). If defendant does so, then in the final step of the inquiry plaintiff must have an opportunity to show by a preponderance of the evidence that defendant's stated reasons are mere pretext for unlawful, discriminatory motives. (*Id.*)

The first step to establishing the prima facie case is to show that plaintiff availed himself to a right protected by the FMLA. Plaintiff has failed to prove this essential first step of the prima facie case. Assuming without deciding in this context that plaintiff's diabetes qualifies as a "serious health condition,"[3] which would entitle him to take FMLA leave, plaintiff could not have taken FMLA leave because he had remaining sick leave available to him.

The Employee Handbook of the Board informs employees of the Board's FMLA policy. It provides in pertinent part:

> Family and Medical Leave
>
> Effective August 5, 1993, eligible employees can take up to 12 weeks of leave annually. . . when their own serious illness prevents them from working. This leave may be taken intermittently . . . **If a serious health condition exists that makes the employee unable to perform the employee's job, then that employee must use available sick and vacation days first**. Those days will be subtracted from the 12 weeks. When all available sick and vacation days have been exhausted, the employee will be off without pay. **The use of vacation and sick time applies to intermittent leave also.** (emphasis added).

29 C.F.R. § 825.207 provides in part:

---

[3] Apparently, plaintiff's diabetes does not require him to take insulin. (*See* Pl. Aff. 2 ¶ 15). Without more evidence as to plaintiff's medical condition the court cannot conclude that plaintiff's "diabetes" qualifies under the FMLA as a "serious health condition."

> (a) Generally FMLA leave is unpaid. However, under the circumstances described in this section, FMLA permits an eligible employee to choose to substitute paid leave for FMLA leave. If the employee does not choose to substitute accrued paid leave, the employer may require the employee to substitute accrued paid leave for FMLA.
>
> . . .
>
> Paid vacation or personal leave, including leave earned or accrued under plans allowing "paid time off," may be substituted, at either the employee's or the employer's option, for any qualified FMLA leave.

29 C.F.R. § 825.207(a) and (e).

In Mr. Strickland's first Affidavit he stated that he left March 5, 1997, because he "did not feel well" and "needed to take the rest of the day off sick." (Pl. Aff. 1 ¶ 3). He also noted that he returned to work on March 10, 1997, his next scheduled work day. (*Id.* at ¶ 7). In plaintiff's second Affidavit he noted that he "had 16 hours sick time left that [he] could use without even going to the doctor." (Pl. Aff. 2 ¶ 12).

Because plaintiff was required to use all personal leave before he would have been eligible for FMLA leave, he is unable to establish that on March 5, 1997, the day he contends he left work due to high blood sugar, that he was entitled to FMLA leave.

Assuming that plaintiff had established a prima facie case, defendant must articulate a legitimate non-discriminatory reason for terminating plaintiff. *Dollar*, 981 F.Supp at 1420. Defendant states that it terminated plaintiff based upon plaintiff's failure to follow Mr. Harmon's instructions on two separate occasions and leaving the job without permission, which resulted in the violation of two company policies. (Def. Ex. 5, 7). Because defendant has met its burden of articulating a legitimate non-discriminatory reason for terminating plaintiff, in order to avoid summary judgment plaintiff must put forth sufficient evidence that a reasonable jury could conclude that defendant actually terminated plaintiff due to plaintiff's exercise or the attempt to

7

exercise a right to which he was entitled under the FMLA. Plaintiff has presented no evidence on which a jury could so conclude. No genuine issues of material fact exist with regard to plaintiff's claim under the FMLA and defendant is entitled to judgment as a matter of law.

**B. Americans with Disabilities Act**

At oral argument on the cross-motions for summary judgment plaintiff's counsel acknowledged that plaintiff did not have any serious opposition to defendant's Motion for Summary Judgment on plaintiff's claim under the ADA. Plaintiff did not argue his ADA claim in his brief. Therefore, the court will only briefly address plaintiff's claim under the ADA.

The ADA provides that no covered employer shall discriminate against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). In order to establish a prima facie case under the ADA, "a plaintiff must demonstrate that (1) he has a disability; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination as the result of his disability." *Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 910 (11th Cir. 1996).

Plaintiff presented the court with evidence that he suffers from the condition of diabetes. Furthermore, plaintiff has stated that he takes numerous medications daily to help in the control of his diabetes. However, plaintiff has failed to prove that this condition qualifies as a disability. In the ADA a "disability" is defined as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Before a physical impairment can trigger coverage under the ADA, it must substantially limit a major life activity.

8

42 U.S.C. § 12102(2). As the terms 'substantially' and 'major' suggest, impairments must be "substantially limiting and significant." *Gordon*, 100 F.3d at 913. ADA regulations define terms of art such as "major life activities," as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

The regulations further clarify the term "substantially limits" to mean that an individual is: "(i) [u]nable to perform a major life activity that the average person in the general population can perform; or (ii) [s]ignificantly restricted as to the condition, manner or duration under which [that] individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1). The same section of this regulation addresses the use of the term "substantially limits" as it relates to the major life activity of work:

> The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630 2(j)(3)(i); *see also Gordon*, 100 F.3d at 912 (adopting the foregoing test for finding a substantial limitation).

Plaintiff has presented no evidence suggesting that his diabetes is a disability as defined by the ADA. There is no evidence that his diabetes substantially limits one or more of his major life activities, nor has he shown that he was regarded by his employer as having a disability.[4] Affidavits provided by defendant show that plaintiff never informed defendant that he had a "disability." (Harmon Aff. ¶ 19-22 ; Gary Aff. ¶ 17; Lewis Aff. ¶ 14-17). Therefore, plaintiff does not meet the first element of the prima facie case and his ADA claim fails as a matter of law.

---

[4] See 29 C.F.R. § 1630.2(1).

9

Assuming that plaintiff's diabetes qualifies as a disability, plaintiff is unable to carry his burden in showing that he was subject to unlawful discrimination as the result of his disability. Plaintiff has presented no evidence that defendant terminated plaintiff because he has diabetes. Because plaintiff has not satisfied the prima facie elements of a case brought under the ADA, defendant's motion for summary judgment on plaintiff's ADA claim is due to be granted.

## V. CONCLUSION

Drawing all reasonable inferences in favor of the plaintiff, the court has concluded that no genuine issues of material fact exist herein and defendant is entitled to judgment as a matter of law. Plaintiff's cross-motion for summary judgment is due to be denied. An Order consistent with this opinion will be entered contemporaneously herewith.

**DONE** this _15th_ day of September, 1999.

_Sharon Lovelace Blackburn_
**SHARON LOVELACE BLACKBURN**
United States District Judge